| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | No. 2:11-CR-81 |
| ) | |
| WILLIAM McMAHAN, *ET AL.* ) | |

# REPORT AND RECOMMENDATION

On June 10, 2010, the magistrate judge of this court issued a warrant to search the residence of the defendant McMahan at 925 Edwina-Bridgeport Road in Newport, Tennessee.[1] Defendant has filed a motion to suppress all evidence seized upon the execution of that warrant, claiming that the underlying affidavit of Special Agent Gregory Smith of the Federal Bureau of Investigation failed to provide probable cause to believe that any evidence of criminal activity would be found at that location, at that time. (Doc. 314). In this regard, defendant argues that Smith's affidavit contains a great deal of information communicated to him by informants, and there is nothing in his affidavit that enabled the magistrate judge to independently evaluate the reliability of those informants. He also argues that the information in Special Agent Smith's affidavit was stale.

Inasmuch as probable cause *vel non* is the only issue, as a result of which the court's inquiry is limited to the four corners of the affidavit, no hearing or argument was needed

---

[1] Doc. 196-1.

beyond the argument contained in the defendant's supporting brief and the response thereto by the United States.

### PROBABLE CAUSE STANDARD

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. In this respect, a judge shall not issue a warrant for the search of a home or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). To make such a showing "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 244 n.13. Thus, the Supreme Court has observed that

> probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," *Carroll v. United States*, 267 U.S. 132, 162 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. *Brinegar v. United States*, 338 U.S. 160, 176 (1949).

*Texas v. Brown*, 460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds for belief supported by less than *prima facie* proof but more than mere suspicion."

2

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Whether probable cause to issue a search warrant exists is evaluated by looking at the totality of the circumstances. *Gates*, 462 U.S. at 238.

*Time* is a critical factor in the probable cause equation. The information supplied to the issuing magistrate must demonstrate that there is probable cause to believe that evidence of criminal activity will be found in the place to be searched *at the time the warrant is executed*. But any question regarding staleness cannot be resolved in a vacuum without reference to a myriad of other relevant factors. Stated another way, there is no arbitrary time limitation that applies to every search warrant; rather, the nature of the criminal activity at issue, the criminal himself, the place to be searched, and the thing to be seized, are all highly relevant. *See, United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998).

The issuing judge's determination that probable cause exists is entitled to "great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (quoting *Gates*, 462 U.S. at 236). This deferential standard promotes the preference for the use of search warrants as opposed to warrantless searches. Id. In determining the sufficiency of the search warrant affidavit, the Court is "concerned only with the statements of fact contained in the affidavit." *United States v. Hatcher*, 473 F.2d 321, 323 (6th Cir. 1973); *see also Whiteley v. Warden*, 401 U.S. 560, 565 (1971). In reviewing the propriety of the search warrant, the Court considers "the evidence that the issuing magistrate had before him only 'to ensure that [he] ha[d] a substantial basis . . . for concluding that probable cause existed.'" *United States v. Jones*, 159 F.3d 969, 973 (6th Cir. 1998) (quoting *Gates*, 462 U.S. at 238-39) (alterations in

original). In addition, "a warrant application must provide sufficient information to allow an issuing judge to independently determine probable cause; his action cannot be a mere ratification of the conclusions of others." *United States v. Gunter*, No. 07-5277, 2009 WL 37481, at *6 (6th Cir. Jan. 8, 2009) (citing *Gates*, 462 U.S. at 239). With this jurisprudence in mind, the Court turns to the specific issues raised by the defendants.

**RELIABILITY OF INFORMANTS**

Defendant correctly notes that an informant identified as "CS-5" in the affidavit was the source of most of the information relied upon by Special Agent Smith in his affidavit. Defendant goes on to point out that no where in the affidavit is there any information from which this magistrate judge could make any independent determination regarding the reliability of CS-5.

When Special Agent Smith presented his application and supporting affidavit to the magistrate judge on June 10, 2010, he advised the magistrate judge that CS-5 (and CS-6) actually were telephone conversations intercepted and recorded pursuant to a Title III wire tap authorized by the district judge of this court.[2] The "reliability" of CS-5 was self-evident, and required no independent corroboration in the sense that would have been necessary if CS-5 was truly an informant. Indeed, the contents of the conversations were more reliably communicated by the Title III interceptions than they would have been if CS-5 had been an actual person.

---

[2]That wiretap is the subject of another report and recommendation, Doc. 312.

4

In addition to the defendant's conversations captured by "CS-5," Buford Rogers identified defendant as the intended recipient of fifty pounds of marijuana seized from Rogers on May 1, 2010.[3] Read as a whole, Smith's affidavit provides probable cause to believe that McMahan trafficked in large quantities of marijuana.

**STALENESS**

Defendant argues that there is nothing in the affidavit that provides probable cause to believe that evidence of criminal activity – *viz.*, marijuana – would be found at defendant's residence on June 10, 2010. In this regard, defendant argues that Buford Rogers indicated that he intended to deliver fifty pounds of marijuana to the defendant McMahan in May 2010, three months before the issuance of the warrant.

As already noted, the question of staleness does not depend on some arbitrary time limitation, but rather on the nature of the crime, the criminal, the place to be searched, and the thing to be seized. The totality of the information in Smith's affidavit indicated that the defendant McMahan consistently trafficked in large volumes of marijuana. Illegal drug trafficking is consistently a long-term endeavor, and the totality of the information in Smith's affidavit indicated that McMahan had been trafficking in marijuana for a lengthy period of time. The information was not stale by any means.

In light of McMahan's long-standing involvement in marijuana trafficking, it was reasonable to conclude that evidence of that criminal activity would be found at his

---

[3]Affidavit, Doc. 196-1, ¶ o-s.

5

residence.  *See, e.g., United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009).

**CONCLUSION**

There was probable cause to believe that the defendant McMahan was engaged in marijuana trafficking, and that evidence of that illegal activity would be found at his home at the time the warrant was issued.  It is respectfully recommended that defendant's motion to suppress, (Doc. 314), be denied.[4]

Respectfully submitted,

s/ Dennis H. Inman
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived.  28 U.S.C. § 636(b)(1).